U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUN 14 2011
CLERK, U.S. DISTRICT COURT
By _____
       Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| PEARLEEN NOBLE | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:09-CV-545-A |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION
and
ORDER

Before the court for decision is the complaint of plaintiff, Pearleen Noble, complaining of the denial by defendant, Michael J. Astrue, Commissioner of Social Security Administration, ("Commissioner") of her application for Supplemental Security Income disability benefits under Title XVI of the Social Security Act. Consistent with the usual practices of this court, the complaint was referred to the magistrate judge for proposed findings, conclusions, and a recommendation; and, the parties were ordered to treat this action as an appeal by plaintiff from Commissioner's ruling adverse to her. On December 29, 2010, the magistrate judge filed his proposed findings and conclusions and his recommendation ("FC&R") that the Commissioner's decision be

reversed, and that the matter be remanded for further proceedings. After having considered the filings of the parties, the administrative record, and the FC&R, the court has concluded that the decision of Commissioner should be affirmed.

I.

Positions Taken by the Parties,
and the FC&R

A. Plaintiff's Opening Brief

In her opening brief filed with the magistrate judge, plaintiff started by defining the issue presented as follows:

> The 5th Circuit mandates evaluation of each medically determinable impairment to see if it "would be expected to limit his ability to perform work-related functions." The ALJ did not evaluate [plaintiff's] carpal tunnel syndrome, chronic pain syndrome, or her foot neuropathy, much less find them severe, despite reasonably inferred vocational limitations that preclude the ALJ's Step Five findings and that support a finding of disability. Did the ALJ properly evaluate these impairments?

Pl.'s Br. at 1. And, she ended her brief with the conclusion that "the Commissioner[] improperly failed to find [plaintiff's] carpal tunnel syndrome, chronic pain syndrome, and foot neuropathy to be severe impairments, thus making his RFC finding unsupported by substantial evidence." Id. at 17. When the excess verbiage is stripped away, the issue plaintiff presented is whether the administrative law judge ("ALJ") properly

2

evaluated what plaintiff contends are her impairments of carpal tunnel syndrome, chronic pain syndrome, and foot neuropathy.

In the discussion section of her brief, plaintiff elaborated by saying that the ALJ erred in failing to apply the standard articulated by the Fifth Circuit in Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985), in making a determination as to whether those conditions were severe impairments. Id. at 11-12. Plaintiff added that the ALJ committed error by not considering those claimed impairments in his conclusion as to plaintiff's residual functional capacity ("RFC") and his ultimate decision to deny plaintiff's request for benefits, with the consequence that such conclusion and decision are unsupported by substantial evidence.

B.  Commissioner's Responsive Brief

In his responsive brief, Commissioner contended that the ALJ, in addition to citing Stone as controlling, discussed plaintiff's alleged impairments under the standard required by the Fifth Circuit in Stone, and that substantial evidence supports the ALJ's determinations as to the nature of plaintiff's severe impairments at step two of the ALJ's five-step analysis.[1]

---

[1] The ALJ correctly used the five-step analysis set forth in 20 C.F.R. §§ 404.1520 and 416.920 to
(continued...)

3

And, Commissioner further responded that substantial evidence supports the ALJ's RFC determination that led to the ALJ's decision that benefits should be denied.

C. The FC&R

The magistrate judge recommended that Commissioner's decision be reversed and that the matter be remanded for further administrative proceedings consistent with the magistrate judge's proposed findings and conclusions. The magistrate judge defined the sole issue before the court as follows:

> The sole issue before the Court is whether the ALJ appropriately evaluated all of [plaintiff's] severe impairments at step two. (Pl. Br. at 11-18.) [Plaintiff] argues that the ALJ erred in failing to find [plaintiff's] carpal tunnel syndrome, chronic pain syndrome, and foot neuropathy to be severe impairments. (Pl. Br. at 11.)

FC&R at 5. The magistrate judge concluded that the issue should be resolved in favor of plaintiff, apparently because "it is not

---

[1](...continued)
determine whether plaintiff is disabled. R. at 20 n.4. First, the claimant must not be presently working at any substantial gainful activity as defined in the regulations. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, the impairment or combination of impairments must meet or equal an impairment listed in the appendix to the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, the impairment or impairments must prevent the claimant from returning to past relevant work. Id. §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. Id. §§ 404.1520(f), 416.920(f). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999). If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing despite his existing impairments. Id.

clear that [the ALJ] applied the appropriate standard" in determining which of plaintiff's conditions constituted severe impairments. Id.

Much of the magistrate judge's FC&R was devoted to a discussion as to whether the language used by the ALJ in his opinion would support a conclusion that the ALJ in fact applied the Stone standard, even though he did not expressly say so. In effect, the magistrate judge concluded that no inference could be drawn from the contents of the ALJ's opinion that he applied the Stone standard, notwithstanding the ALJ's citation to Stone. The magistrate judge thought significant that "despite evidence in the record that [plaintiff] has carpal tunnel syndrome, chronic pain syndrome, and foot neuropathy, the ALJ only briefly mentioned [plaintiff's] carpal tunnel syndrome, and he omitted entirely any discussion of [plaintiff's] chronic pain syndrome or foot neuropathy impairments." Id. at 6.

The recommended remand was said to be "appropriate to allow the Commissioner to clarify that the Stone opinion was followed and to revisit whether any other of [plaintiff's] impairments should have been included among her severe impairments at step two of the ALJ's analysis." Id. at 8. The magistrate judge did

not consider whether Commissioner's decision was supported by substantial evidence.

D. Commissioner's Response to the FC&R

Commissioner started his response to the FC&R with an argument that the magistrate judge followed an overly strict interpretation of Stone, and that when properly considered the ALJ's opinion discloses that the ALJ did adhere to the Stone standard. Having concluded that the ALJ applied the proper standard at step two, Commissioner then discussed whether substantial evidence supports Commissioner's final decision, an issue the magistrate judge refrained from addressing. To bolster its position on that issue, Commissioner referred the court to record references and arguments made by Commissioner in its response to plaintiff's opening brief.

II.

Analysis

A. There is Substantial Evidence to Support Commissioner's RFC Conclusion and Decision

In deciding not to accept the recommendation of the magistrate judge, the court bears in mind that judicial review of the decision of the Commissioner of nondisability is limited to two inquiries: (1) whether Commissioner's decision is supported

by substantial evidence on the record as a whole and (2) whether Commissioner applied the proper legal standards. See Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir. 1992). And, as the Fifth Circuit reminded in Hames v. Heckler:

> It must be remembered that an individual claiming disability insurance benefits under the Social Security Act has the burden of proving her disability. To meet her burden and establish disability under the Act, Plaintiff must prove that she is unable to engage in any substantial gainful activity. Plaintiff must also establish a physical impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity.

707 F.2d 162, 165 (5th Cir. 1983) (citations omitted). See also Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988); Shearer v. Astrue, 2008 WL 5136949, at *3, No. 4:07-CV-552-A (N.D. Tex. Dec. 5, 2008).

The basis of the magistrate judge's recommendation of reversal and remand was the perceived failure of the ALJ to make clear that he applied the correct standard for severity at step two of the sequential evaluation process used to determine disability. Although recognizing that the ALJ need not use "magic words" when referring to the Stone severity analysis, the magistrate judge nevertheless recommended that remand was appropriate for clarification by Commissioner that the Stone opinion was followed.

The court has concluded that this court's analysis should start with an evaluation of whether substantial evidence supports the ALJ's post-step-two findings and conclusions and the denial decision based thereon, and whether the ALJ appropriately considered the entire record before him in making those findings and conclusions and reaching that decision. If the court decides that they are supported by substantial evidence and that the ALJ appropriately considered the entire record, the issue of whether the magistrate judge applied the Stone standard at step two becomes unimportant. See Chaparro v. Bowen, 815 F.2d 1008, 1011 (5th Cir. 1987) (per curiam); Jones v. Bowen, 829 F.2d 524, 526 n.1 (5th Cir. 1987) (per curiam).

The ALJ made the following post-step-two findings and conclusions that led to his decision that plaintiff was not eligible for Supplemental Security Income disability benefits:

8. Claimant has retained the exertional capacity for the sustained performance of a full range of light work activity. There are no other physical limitations or restrictions.

9. Claimant has these sustained work-related mental limitations: she can have only incidental contact with the public and she can perform tasks with simple, repetitive instructions.

10. Claimant has no past relevant work.

11. Claimant was within three months of her 50th birthday when she protectively filed the January 2005 application and she is considered as within the closely approaching advanced age category at all relevant times; she attended school through the 11th grade and has her GED, the equivalent to a high school education; and, while she has not acquired work skills, in view of her age and residual functional capacity, the issue as to the acquisition of work skills is immaterial.

12. If claimant had no work-related mental limitations, in consideration of her exertional capacity and relevant vocational characteristics, then Rule 202.13 of the Medical-Vocational Guidelines at 20 CFR Part 404, Subpart P, Appendix 2, would direct a conclusion that she is not disabled.

13. Considering her residual functional capacity (including nonexertional limitations), age, education, work history and the expert vocational testimony, there are jobs in significant numbers in the national economy that claimant can perform. The jobs and respective, approximate incidence in the national economy include: housekeeping cleaner, 8200 in the economy of this state and 100,000 in the national economy; advertising material distributor, 1600 in this state and 20,000 nationally; bagger, 3200 in this state and 40,000 nationally and racker, 2400 in this state and 30,000 nationally.

14. Claimant has not been disabled, as defined in the Social Security Act, at any relevant time through the date of this decision. 42 USC 1382c(a)(3)(A); 20 CFR 416.920(g).

R. at 29.

The court is satisfied that there is substantial evidence to support the critical findings and conclusions and the decision of

the ALJ, and that the ALJ properly considered all evidence before him in making his findings and conclusions and reaching his decision. The court has no reason to disbelieve the ALJ when he said "I have considered the complete medical history consistent with 20 CFR 416.912(d)," R. at 20, and when he introduced the findings set forth above with the statement that the findings were made "[a]fter careful consideration of the entire record," R. at 28.

In the ALJ's discussion at R. 21-28 under the heading "Evaluation of the Evidence," the ALJ thoroughly considered and evaluated the evidence. He started by giving recognition to what the record showed was the origin of many, if not most, of what plaintiff considered to be impairments, including multiple complaints of pain, by noting that she was hospitalized in 1995 for injuries suffered in a motor vehicle accident, and that she "alleges she is disabled because of the functional limitations imposed by her severe impairments, including injuries to her head, back and legs, and hypertension and heart problems." R. at 21. He described the treatment plaintiff received for her injuries, and the complications caused by an episode of congestive heart failure.

Reference was made by the ALJ to the consultive examination conducted by Dr. Paul Michiels in May 2005. Of interest is the description Dr. Michiels gave in his examination report of the history plaintiff related in 2005 of her impairments:

> HISTORY OF PRESENT ILLNESS: [Plaintiff] is a 50-year-old female who is here today with history of lower back pain and bilateral carpal tunnel pain. [Plaintiff] was involved in a motor vehicle accident in 1995, where she underwent blunt head trauma and fractured pelvis. The blunt head trauma, she maintains has resulted in occasional memory loss, but no focal or neurological signs or symptoms. She has not had an MRI scan thereafter. She has occasional left sided headaches thereafter as well. With the fractured pelvis, she also developed some left pelvis/hip discomfort with lower back pain. At one time, she has been told she probably has disc disease, but x-rays were taken apparently, but no scan was done. She develops pains radiating into the left lower leg at times with activity. She has carpal tunnel syndrome bilaterally, proven apparently by nerve conduction studies, and indeed underwent carpal tunnel surgery on the right side, last year, but is persistent in the medial nerve parasthesia, distribution since that time and has declined to get the other side done to this time. She has symptoms bilaterally and still she admits to a history of smoking as well as a previous now stopped history of street drug usage, never intravenous, always inhalation.

R. at 150.

Thus, the record shows that the ALJ, as a part of considering plaintiff's complete medical history, considered her ongoing complaints of pain (chronic pain) and her carpal tunnel impairments. Of significance to the findings, conclusions, and

11

decision of the ALJ are certain of the findings in 2005 of Dr. Michiels based on his evaluation of plaintiff. Under the heading "Musculoskeletal," Dr. Michiels reported:

> Gain and Station -- [Plaintiff] has a normal gait and station, no signs of ataxia or unsteadiness. [Plaintiff] is able to stand on heels and toes without difficulty. [Plaintiff] is able to bend all the way over and get back up without difficulty. [Plaintiff] is able to squat all the way down and get back up without difficulty. Straight leg raise is negative. Head and Neck -- atraumatic, normocephalic. Face is symmetric. Spine, Ribs and Pelvis -- No tenderness to palpation of the spine, unless otherwise specified. RUE -- Normal exam of RUE, no joint tenderness or enlargement. LUE -- Normal exam of LUE, no joint tenderness or enlargement. RLE -- Normal exam of RLE, no joint tenderness or enlargement. LLE - Normal exam of LLE, except hip with 80 degrees flexion on range of motion.

R. at 151; and under the heading "Neurologic":

> Cranial Nerves -- Intact and face is symmetric. Motor strength was 5/5 in all muscle groups tested, unless otherwise specified. Cerebellar functions appear to be normal. Reflexes -- Deep tendon reflexes are symmetric and normal, unless otherwise specified. Handgrip is 5/5, normal and symmetric, unless otherwise specified. There is no evidence of fasciculations, atrophy, or rigidity. Fine finger movements are normal. The [plaintiff] has normal ability to handle small objects and button buttons on clothing.
> Sensation - Sensory exam was symmetric and normal. Intact to soft touch.

R. at 152. Noteworthy is that Dr. Michiels recorded no complaint by plaintiff of foot neuropathy or of any physical manifestation of a carpal tunnel syndrome problem. Other observations Dr.

Michiels made as a part of his examination of plaintiff added doubt to the genuineness of certain of plaintiff's expressed limitations. R. at 151.

After discussing Dr. Michiels's examination and findings, the ALJ carefully reviewed other evaluations made of plaintiff's conditions, as well as plaintiff's complaints. R. at 22-27. The discussion in the ALJ's opinion shows that he considered from more than one source, including plaintiff's testimony, plaintiff's complaints about the pain she said she experienced. An example of the records the ALJ reviewed and considered is the outpatient record of Tarrant County Hospital pertaining to a 2008 visit by plaintiff to the clinic, which showed a diagnosis of chronic pain syndrome and showed that plaintiff gave a history of neuropathic foot pain. R. at 289-90. Another example is the report of an examination Dr. Farzana N. Sahi performed on plaintiff in June 2008. In the history section of Dr. Sahi's report, Dr. Sahi described in some detail plaintiff's complaints of pain, which constituted the majority of the doctor's statement of "History of Present Complaints." R. at 298. The report shows that plaintiff had been diagnosed with chronic pain syndrome. R. at 298. Not only did Dr. Sahi's report make known to the ALJ for his consideration plaintiff's complaints of chronic pain, the

13

report provides evidentiary support for certain of the ALJ's findings, conclusions, and decision. R. at 299-300 (reporting that plaintiff "has normal [range of motion] of her lumbar spine and no radicular symptoms of her lower extremities." R. at 300.). Dr. Sahi made no mention of a history or complaint related to carpal tunnel syndrome, and made findings inconsistent with any impairment resulting from such a condition. R. at 300 (noting that "there is normal fine finger control"). Nor did Dr. Sahi make any finding suggestive of a foot neuropathy problem. Interestingly, the medical record that did mention "neuropathic foot pain," R. at 289, did not include foot neuropathy in the Diagnosis/Assessment. R. at 290.

While the term "chronic pain syndrome" was not used, the ALJ's discussion makes quite clear that the ALJ took into account in his evaluations whatever conditions were leading to plaintiff's complaints of pain and the consequences of those conditions.[2] Similarly, the ALJ's discussion provides an adequate demonstration that the ALJ considered all of plaintiff's complaints that were disclosed in the record, which necessarily

---

[2]The ALJ showed a full consciousness of plaintiff's ongoing complaints of pain, and made an appropriate evaluation, saying "there are no indicia of intractable pain, such as weight change, disuse muscle atrophy or guarding, blood pressure spikes or spells of rapid breathing or tachycardia, or premature aging." R. at 25. An evaluation of the kind used by the ALJ has been approved by the Fifth Circuit. See Hames v. Heckler, 707 F.2d 162, 166 (5th Cir. 1983).

14

would include any complaints that might be thought to be related to foot neuropathy or carpal tunnel syndrome conditions, as well as anything that might be characterized as a chronic pain syndrome condition.

The ALJ described the scope of his evaluation of the record in assessing impairment severity and secondary functional limitations as follows:

> When assessing impairment severity and secondary functional limitations, I evaluated [plaintiff's] testimony and other statements regarding daily activities, restrictions and symptoms, but I considered several factors and they are not controlling. In addition to the testimony and objective medical facts/opinions, I considered other relevant factors, including but not limited to (1) [plaintiff's] daily activities; (2) the location, duration, frequency and intensity of her subjective complaints; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness and side-effects of medication; (5) the prescribed treatment regimen; and (6) any other palliative measures she may use. 20 CFR 416.929 and SSR 96-7p.

R. at 23.

Plaintiff has not brought to the court's attention anything that would cast doubt on the credibility of the ALJ's statements that he "considered the complete medical history," R. at 20, and that his findings were made "[a]fter careful consideration of the entire record," R. at 28, or the other recitations in the ALJ's opinion showing that he, indeed, did evaluate the entire record

15

in making his findings and conclusions and reaching his decision.

The court concludes that there is substantial evidence to support the ALJ's step three, four, and five findings and conclusions and his decision denying plaintiff's claim, and that the ALJ appropriately considered everything he should have considered in the making of those findings and conclusions and reaching his decision.

B.  The *Stone* Issue

The ALJ described "[s]evere medically determinable impairments" by the following footnote in his opinion:

> Severe medically determinable impairments [are] those that, either singly or in combination, have more than a minimal effect on claimant's ability to perform activities of daily life or basic work activities. Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985); 20 CFR 416.921.

R. at 22 n.5. Plaintiff contends, and the magistrate judge agreed, that the ALJ's opinion does not contain language that would support a conclusion that the ALJ applied the standard approved in Stone for determining whether a claimant's impairment is severe. The Stone standard is that "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work,

irrespective of age, education or work experience." <u>Stone</u>, 752 F.2d at 1101 (internal quotation marks and brackets omitted). <u>Stone</u> established the Fifth Circuit rule that:

> [W]here the disposition has been on the basis of nonseverity, we will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used. Unless the correct standard is used, the claim must be remanded to the Secretary for reconsideration.

<u>Id.</u> at 1106. While each side makes a reasonable argument as to whether the ALJ's opinion discloses that the ALJ applied the correct standard, the court has concluded that it does not need to resolve that issue.

The ALJ's disposition was not on the basis of nonseverity. Rather, the ALJ did find severe impairments at step two, and went on to resolve plaintiff's claim by making appropriate determinations at steps three, four, and five. The failure of the ALJ specifically to address carpal tunnel syndrome, chronic pain syndrome, and foot neuropathy at step two is, at best from plaintiff's standpoint, a defect in the step two analysis that did not affect plaintiff's substantial rights.

Rulings of the Fifth Circuit have clarified that <u>Stone</u> does not require remand just because the ALJ failed to reference the

Stone standard. See Chaparro, 815 F.2d at 1011; Jones, 829 F.2d at 526 n.1 (rejecting the claimant's argument concerning Stone because ALJ proceeded through steps four and five of the analysis). The Stone rulings simply do not apply to this case. The ALJ in Stone did not find that the plaintiff had an impairment or combination of impairments that was severe--in other words, the ALJ found against the plaintiff at step two of the five-step analysis. As the Fifth Circuit noted in Chaparro, the ALJ's determination "did not turn on whether or not [plaintiff's] impairment was severe, but on whether [plaintiff] could return to his past relevant work--an inquiry unaffected by the test set forth in Stone." Chaparro, 815 F.2d at 1011.

The same result is required in the instant action. Whether or not the ALJ applied the correct severity standard, he found in favor of plaintiff at step two, and proceeded through the remaining steps of the analysis. As in Chaparro, the ALJ's determination rested on an inquiry "largely unaffected by the test set forth in Stone," id., rendering that argument irrelevant to the disposition of plaintiff's case. The court thus rejects the recommendation of the magistrate judge to remand the case on that basis.

Plaintiff has not persuaded the court that the action taken by the ALJ at step two had any adverse impact from plaintiff's standpoint on the ALJ's findings and conclusions at steps three, four, or five. Therefore, the court concludes that even if the court were to assume that the Stone standard was not properly applied by the ALJ, such a failure was harmless.

C. Conclusion

For the reasons stated above, the court has decided not to accept the recommendation of the magistrate judge in the FC&R and to reject the magistrate judge's findings and conclusions in the FC&R to whatever extent they are inconsistent with this memorandum opinion and order. For the same reasons, the court has concluded that the decision of Commissioner denying plaintiff's application for disability benefits should be affirmed.

III.

Order

Therefore,

The court ORDERS that the decision of Commissioner that

claimant is not eligible for Supplemental Security Income disability benefits be, and is hereby, affirmed.

SIGNED June 14, 2011.

JOHN McBRYDE
United States District Judge